IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE LEA JARVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-107-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 19-36). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 15, 2012 through her date last insured of June 30, 2013. (TR. 21). At step two, the ALJ determined Ms. Jarvis had the following severe impairments: post-traumatic stress disorder and panic disorder with agoraphobia. (TR. 22). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 22).

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. (TR. 34). The ALJ further concluded that Ms. Jarvis retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: restricted to work involving simple tasks and routine supervision; no more than occasional interaction with coworkers and supervisors; and she would be precluded from any public contact.

(TR. 24).

With this RFC, the ALJ made additional findings at step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 67-68). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 68). The ALJ adopted the testimony of the VE and concluded that Ms. Jarvis was not disabled based on her ability to perform the identified jobs. (TR. 35-36).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) in failing to properly evaluate Plaintiff's failure to comply with prescribed treatment and (2) in the evaluation of a treating physician's opinion.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. PLAINTIFF'S FAILURE TO COMPLY WITH PRESCRIBED TREATMENT

Ms. Jarvis alleges error in the ALJ's failure to properly evaluate Plaintiff's non-compliance with medication which the ALJ found had been effective in treating Ms. Jarvis' anxiety and panic attacks. The Court agrees.

### A. The Medical Evidence

Plaintiff began seeing Dr. John Schipul in June of 2012 for panic attacks which had been occurring for approximately one month. (TR. 367-369). At that time, Ms. Jarvis was taking Xanax to treat her anxiety. (TR. 368). On July 5, 2012, Dr. Schipul diagnosed Ms. Jarvis with Agoraphobia with Panic Disorder and switched Plaintiff's primary medication

3

to Paxil with instructions to take Xanax only as needed. (TR. 366). In September 2012, Dr. Schipul prescribed Risperidone in an attempt to stop Plaintiff's use of Xanax. (TR. 359).

In December 2012, Plaintiff reported doing well on Risperidone, but stopped taking the medication due to side effects involving weight gain and insomnia. (TR. 354-357). In January 2013, Plaintiff presented to Dr. Schipul for "severe panic attacks." According to the physician's note:

> patient was having side effect of weight gain with the risperidone so at that time stop the risperidone and started Topamax instead for its mood stabilization and weight loss properties. Patient says that without the risperidone she is on [sic] backwards and is now having more frequent panic attacks is not able to stand in line at stores not able to leave is [sic] her house without anxiety and starting to affect her life again.

(TR. 346). As a result of the increased panic attacks, Dr. Schipul once again prescribed Risperidone. (TR. 347).

In April 2013, Plaintiff saw Dr. Schipul for a medication follow-up appointment. (TR. 340-342). Plaintiff reported that her anxiety was doing well on Paxil and Risperidone, but also that she had gained 10 pounds, even on the lower dose of Risperidone. (TR. 340). Accordingly, Dr. Schipul attempted to transition Ms. Jarvis to Buspar. (TR. 342). A June 2013 progress note stated that Plaintiff had quit taking Paxil due to weight gain, but due to suffering severe panic attacks, she would start taking it again. (TR. 333). In August 2013, Plaintiff agreed to go back on Risperidone, despite the side effect of weight gain. (TR. 331). Even so, a September 2013 progress note stated that once again, Plaintiff had quit taking Risperidone due to weight gain. (TR. 339). Since quitting the medication, Dr.

4

Schipul stated that Ms. Jarvis had "gone back to severe anxiety and not able to leave her house even to take her children to school." (TR. 339).

### B. The ALJ's Reliance on Ms. Jarvis' Failure to Comply with Prescribed Treatment

In his summary of the evidence, the ALJ discussed Plaintiff's reports to Dr. Schipul regarding control of her panic attacks when taking Risperdal, and her lack of control and ability to function when she stopped taking the medication due to weight gain. (TR. 28-29). Three times in the decision, the ALJ referred to Ms. Jarvis' change in anxiety and panic attacks when she was taking and not taking the recommended medication. First, at step three, the ALJ found that when Plaintiff was compliant with her medication, she: (1) suffered from only moderate restrictions in the areas of daily activities; concentration, persistence, and pace; and social functioning and (2) did not qualify for Listing 12.06(C). (TR. 22-24). Second, when evaluating Plaintiff's veracity, the ALJ found the Plaintiff only partially credible, stating:

> The severity of social anxiety symptoms alleged by the claimant is not entirely consistent with the medical evidence of record. The treatment notes provided by Dr. Schipul show that Risperdal and Paxil controlled the claimant's anxiety and depression symptoms relatively well. When compliant with taking those medications, the claimant told Dr. Schipul that her anxiety and panic symptoms were well managed and that she was able to go shopping and function outside of the house. The claimant showed poor compliance with these medications and ultimately stopped taking Risperdal and Paxil altogether due to her concerns about weight gain side effects, which resulted in her severe social anxiety symptoms returning.
>
> . . .
>
> Since the medical evidence of record shows that the claimant's anxiety symptoms were less severe than she alleged and reported, the undersigned only finds the claimant's statements to be partially credible.

(TR. 30-31) (internal citations omitted).

Finally, in support of the RFC findings and in his denial of benefits, the ALJ discussed Plaintiff's non-compliance wither medication:

> In sum, the medical evidence of record, the opinions provided by Dr. Potter and Therapist Byte, and the mental residual functional capacity assessments provided by the Disability Determination Services psychological consultants, as described above, support the residual function capacity assessment.
>
> . . .
>
> While the claimant has a history of severe anxiety and frequent panic attacks when outside the home, the above-mentioned evidence shows that she was capable of driving, shopping, and functioning outside the home when taking Paxil and Risperidal as prescribed by Dr. Schipul. This evidence is sufficient to support a finding that, when compliant with recommended medical treatment, the claimant was capable of performing work involving no more than occasional interaction with coworkers and supervisors and involving no public contact.

(TR. 33-34).

### C.  Error in the ALJ's Failure to Properly Evaluate Plaintiff's Non-Compliance with Recommended Treatment

In support of her argument that an ALJ must consider four factors before denying benefits based on a failure to comply with medical treatment, Plaintiff relies on *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987) and *Thompson v. Sullivan,* 987 F.2d 1483, 1490 (10th Cir. 1993). In *Frey*, the Court stated:

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

*Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987) (internal quotations and citations omitted). In *Thompson*, the Court extended the requirement in *Frey* requirement to credibility findings. *See Thompson*, 987 F.2d at 1490 (stating that the four *Frey* factors

6

must be considered "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility[.]").

But in *Qualls v. Apfel,* 206 F.3d 1368 (10th Cir. 2000), the Tenth Circuit Court of Appeals rejected a claimant's argument regarding the necessity of the ALJ to consider the four factors when determining credibility:

> [P]laintiff also argues that the ALJ could not consider his failure to take pain medication in the absence of evidence that plaintiff had been prescribed pain medication and that it would have restored his ability to work if he had taken it. Plaintiff's reliance on our opinion in *Frey* is misplaced, because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment. The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

*Qualls,* 206 F.3d at 1372–73 (10th Cir. 2000) (internal citations omitted).

Ms. Jarvis contends that the four-factor test in *Frey* applies because the ALJ relied on Plaintiff's non-compliance with medication in denying benefits. (ECF No. 17:13-15). Defendant takes the opposite position, contending that the ALJ considered Plaintiff's noncompliance solely to evaluate her credibility, under which circumstances *Frey* would not apply. (ECF No. 18:8-12). The Court agrees with Plaintiff.

To the extent the ALJ used Plaintiff's noncompliance with prescribed treatments to evaluate her credibility, *Qualls* is controlling and the ALJ need not apply the four-factor test in *Frey*. However, in addition to relying on Plaintiff's lack of compliance with recommended treatment in discounting her credibility, the ALJ also relied on the same to deny benefits. *See* TR. 34 ("when compliant with recommended medical treatment, the claimant was capable of performing work involving no more than occasional interaction

with coworkers and supervisors and involving no public contact."). Accordingly, the ALJ should have analyzed whether, under *Frey*, Plaintiff's failure to comply with the recommended treatment was somehow justified.

For example, the first factor in *Frey* asks whether the treatment would have restored the claimant's ability to work. *Frey*, 816 F.2d at 517. The ALJ apparently believes that it would, but evidence in the record suggests otherwise. On June 28, 2013, Plaintiff agreed to go back on Risperidone, despite the weight gain side effect. (TR. 333). And on August 2, 2013, during a consultative examination with Dr. Jennifer Potter, Ms. Jarvis reported that she was prescribed Xanax, Risperidone, and Paxil. (TR. 285). Plaintiff also reported that she had a panic attack every time she left her house and found it impossible to drive anywhere. (TR. 284-285). Accordingly, Dr. Potter reported that Plaintiff suffered from Panic Disorder with Agoraphobia, with "problems with the social environment [and] limited social involvement." (TR. 286-287). The timing of Dr. Schipul's recommendation for Plaintiff to begin taking the Risperdal and Dr. Potter's examination, suggests that Plaintiff was taking the medication and still unable to function. But the Court will not speculate in this regard, instead only noting that the ALJ should have explored this possibility.

In sum, because the ALJ relied on Plaintiff's failure to comply with recommended treatment which the ALJ believed would allow Ms. Jarvis to work, he should have analyzed Ms. Jarvis' non-compliance under the four factors in *Frey*. The failure to do constitutes legal error.

## VI. THE ALJ'S EVALUATION OF A TREATING PHYSICIAN'S OPINION

Ms. Jarvis alleges error in the ALJ's evaluation of the opinion from Plaintiff's treating physician, Dr. Patrick Ellis. (ECF No. 17:15-22). Ms. Jarvis is correct.

### A. ALJ's Duty to Assess a Treating Physician's Opinion

An ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must: (1) assess the opinion under a series of factors[1] and give "good reasons" for the weight assigned to the opinion. *Id.* at 1332. "The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Id.* If the

---

[1] These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Allman*, at 1331-1332; 20 C.F.R §§ 404.1527, 416.927.

ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his rationale in support of his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review).

### B. Dr. Ellis' Opinion

On September 3, 2014, treating psychiatrist Dr. Ellis completed a "Mental Impairment Questionnaire" for Ms. Jarvis. (TR. 428-434). There, Dr. Ellis diagnosed Ms. Jarvis with Panic Disorder with Agoraphobia, Post-Traumatic Stress Disorder, and Major Depressive Disorder. (TR. 428). Dr. Ellis opined that Plaintiff's symptoms included:

- Poor memory,
- Sleep and mood disturbance,
- Emotional lability,
- Recurrent panic attacks,
- Anhedonia or pervasive loss of interests,
- Social withdrawal or isolation, decreased energy,

10

- Intrusive recollections of traumatic experience,

- Persistent irrational fears,

- Generalized persistent anxiety,

- Feelings of guilt or worthlessness, and

- Difficulty thinking or concentrating.

(TR. 428-29). In support, of these findings, Dr. Ellis stated:

> On daily basis [Plaintiff] obsesses about safety of her children. . . Has frequent intense panic attacks upon trying to leave the home. . . . Also has classic symptoms of PTSD. . . . Intense anxiety even at home has diminished to a manageable level but she has had no improvement in severe agoraphobia.

(TR. 429). Dr. Ellis stated that Plaintiff had been suffering this level of impairment over two years, that her prognosis was "poor" and that she is unable to work due to her panic disorder. (TR. 430). Dr. Ellis also described Ms. Jarvis' capabilities and limitations in specific areas of work. (TR. 431-432). The descriptions of limitations were segregated into three categories: (1) mental abilities and aptitudes needed to do unskilled work, (2) mental abilities and aptitudes needed to do semiskilled and skilled work, and (3) mental abilities and aptitudes needed to do particular types of jobs. (TR. 431-432). In the category of unskilled work, Dr. Ellis opined that Plaintiff had "poor or no[ ]" ability and aptitude to:

- remember work-like procedures,

- carry out very short and simple instructions,

- maintain attention for two-hour segment,

- maintain regular attendance and be punctual within customary, usually strict tolerances,

- sustain an ordinary routine without special supervision,

- work in coordination with or proximity to others without being unduly distracted,

- make simple work-related decisions,

- complete a normal workday and workweek without interruptions from psychologically based symptoms,

- perform at a consistent pace without an unreasonable number and length of rest periods,

- accept instructions and respond appropriately to criticism from supervisors,

- get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and

- deal with normal work stress.

(TR. 431-432). In the category of semiskilled and skilled work, Dr. Ellis opined that Plaintiff had "poor or no[ ]" ability and aptitude to:

- understand and remember detailed instructions,

- carry out detailed instructions,

- set realistic goals or make plans independently of others,

- deal with stress of semiskilled and skilled work.

(TR. 432). Finally, in the category of abilities and aptitudes to do certain types of jobs, Dr. Ellis opined that Plaintiff had "poor or no[ ]" ability and aptitude to:

- interact appropriately with the general public,

- travel in unfamiliar place, and

- use public transportation.

(TR. 432). Finally, Dr. Ellis stated that Plaintiff suffered "extreme" difficulties in maintaining social functioning, "frequent" deficiencies of concentration, persistence, or

12

pace, and "continual" episodes of deterioration or decompensation in work or a work-like settings. (TR. 433).

### C. The ALJ's Treatment of Dr. Ellis' Opinion

The ALJ summarized Dr. Ellis' opinions and accorded them "partial weight." (TR, 32-33). In doing so, the ALJ stated:

> While Dr. Ellis is a treating source, he had a relatively short treatment relationship with the claimant that lasted less than a year. Furthermore, unlike Dr. Potter, Dr. Ellis did not have an opportunity to examine the claimant when compliant with taking Paxil and Risperdal as prescribed by Dr. Schipul. The medical evidence of record, including Dr. Potter's mental status examination findings, supports Dr. Ellis's conclusion that the claimant was unable to perform the activities necessary for semi-skilled and unskilled work. This portion of Dr. Ellis' opinion appears to be consistent with the opinions provided by Dr. Potter and Therapist Byte, which the undersigned accords great weight for the reasons discussed above. However, when the claimant was compliant with taking Paxil and Risperdal, she was less limited in the abilities and aptitudes necessary to perform unskilled work than Dr. Ellis's opinion suggests. For instance, Dr. Ellis marked that the claimant had no useful ability to carry out very short and simple instructions, but this is not consistent with the mental status examination findings provided by Dr. Potter. Since Dr. Ellis's opinion is not consistent with the record as a whole, the undersigned only accords his opinion partial weight. Furthermore, the undersigned notes that Dr. Ellis's statement that the claimant had been unable to work since 2012 was an opinion on an issue reserved to the Commissioner under the Regulations, and also addressed a period of time that predated his treatment of the claimant.

(TR. 32-33) (internal citations omitted). In part, Plaintiff alleges that the ALJ's explanation was deficient because he failed to explain his rejection of a portion of Dr. Ellis' opinions. The Court agrees.

The ALJ appeared to completely credit Dr. Ellis' findings with regard to specific work-related limitations in the categories of semi-skilled and unskilled work as consistent with findings from Therapist Byte and Dr. Potter. *See* TR. 32 ("The medical evidence of record, including Dr. Potter's mental status examination findings, supports Dr. Ellis's

conclusion that the claimant was unable to perform the activities necessary for semi-skilled and unskilled work. This portion of Dr. Ellis' opinion appears to be consistent with the opinions provided by Dr. Potter and Therapist Byte, which the undersigned accords great weight for the reasons discussed above."). Three problems exist with this rationale.

First, in the category of unskilled work, Dr. Ellis opined that Ms. Jarvis had no ability to:

- make simple, work-related decisions,
- accept instructions and respond appropriately to criticism from supervisors, and
- get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.

(TR. 431-432). The ALJ stated that he credited this portion of Dr. Ellis' opinion as supported by the findings from Dr. Potter and Therapist Byte. (TR. 32). But such conclusion is not consistent with the RFC which states that Ms. Jarvis can perform work involving simple tasks and routine supervision with occasional interaction with coworkers and supervisors. (TR. 24). Plaintiff does suggest the possibility of a typographical error in that the ALJ meant to credit Dr. Ellis' opinions with regard to "semi-skilled and *skilled*" work instead of "semiskilled and *unskilled*" work. (ECF No. 17:19). But even crediting that possibility, three problems still exist. First, the ALJ still failed to explain his rejection of two work-related limitations which directly conflicted with the RFC—Plaintiff's inability to accept instructions and respond appropriately to criticism from supervisors and get along with co-workers or peers without unduly distracting when or exhibiting behavioral extremes. The failure to explain the rejection constitutes legal error. *See Watkins v.*

*Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons.").

Second, the ALJ's finding regarding Plaintiff's ability to carry out short and simple instructions was based on a conclusion that Plaintiff could do so if compliant with her medication. (TR. 32). But as explained, because this finding was central to the RFC and directly related to the denial of benefits, the ALJ had to evaluate the lack of compliance under the standard articulated in *Frey*. *See supra*. Because the ALJ failed to do so, this rationale cannot stand.

Third, the ALJ failed to explain his obvious rejection of the remainder of Dr. Ellis' opinions regarding Plaintiff's inability to perform many of the skills necessary for unskilled work. This type of selective review of a medical opinion is prohibited in this Circuit. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

For these three reasons, the Court concludes that the ALJ committed legal error in his evaluation of Dr. Ellis' opinion and reversal is warranted.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. The ALJ failed to evaluate Ms. Jarvis' noncompliance with medication under the four-factor test enunciated in *Frey v. Bowen*. The ALJ also erred in his evaluation of the opinion of Plaintiff's treating psychiatrist, Dr. Ellis by failing to explain his rejection of certain opinions and ignoring, without explanation, others.

As a result, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings. On remand, the ALJ is specifically directed to: (1) re-evaluate Plaintiff's non-compliance with recommended treatment under the proper standard and (2) re-evaluate the opinions of Dr. Ellis, providing reasoning which is supported by the record and which would allow for proper appellate review.

ENTERED on October 10, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE